## HITTSON v. BROWNE et al.

1. To entitle a person to practice as an attorney at law in the courts of record of this State (except in the county courts) he must be duly licensed and enrolled as an attorney.

2. An unlicensed person cannot recover compensation for professional services, nor can he be permitted to assume the calling and office of an attorney by the mere shift of using the name of a qualified person.

3. The association of a licensed attorney with one who does not fill this character will not give a joint action in the names of the two for counsel rendered or service performed by either or both, nor afford a lien to the two, for fees in respect to such counsel or service upon a judgment recovered by the qualified person.

The cases of *Harland et al.* v. *Libienthal*, 53 N. Y. 440, and *Turner* and *Smith* v. *Reynall*, 14 C. B. (N. S.) 328, distinguished.

*Appeal from District Court of Arapahoe County.*

THE bill in this case states that complainants, as copartners, as Browne & Putnam, on the 21st of April, 1873, as attorneys, were retained by one Polly A. Shortridge to collect a promissory note signed by James Patterson, payable to one G. W. Arnold, for the sum of $1,000 ; that in pursuance of such retainer, they brought a suit in the probate court of Arapahoe county, and that at the June term, 1873, a judgment was rendered in favor of said payee for the use of said Shortridge, for $466.72 and costs.   That on the 25th

of June, 1873, defendant prayed an appeal, and on the 8th of July, 1873, filed his appeal bond, and on the 6th day of October, the papers were filed in the district court. And that on the 8th day of May, 1874, at the April term of said district court, said appeal was dismissed on motion of complainants, as such attorneys, with a *procedendo* to said probate court. That an execution was issued against Patterson and returned unsatisfied. That on the 24th day of August, 1874, said Putnam, on behalf of said firm, brought an action in said district court of Arapahoe county on said appeal bond, against said Patterson as principal and John Hittson and Samuel Singer as sureties, and on the 28th of November, 1874, at the September term of the court in that year, said Arnold recovered a judgment for the use of said Polly A. Shortridge against said Hittson for the sum of $575.-61 and costs. That the complainants paid advance costs to the clerk, the sum of $2, on behalf of said plaintiff. That the judgment so rendered in said district court, but on what day is unknown, the said Shortridge received from said Hittson satisfaction thereof, and has satisfied the said judgment in the probate court in full, but has never paid complainants their fees and moneys expended. That the complainants' fees and services in said cause in the probate court were worth $85, and their fees and expenditures necessarily made to the action on the bond were worth the sum of $87. That the same has not been paid. That the satisfaction of such judgment was made by said Shortridge and Hittson for the purpose of cheating complainants out of their fees and expenditures, amounting in the aggregate to $197, of which Hittson, before he paid the judgment, had notice by virtue of the statute.

PRAYER. That Hittson be made defendant to the bill, and for process, etc. And that an account be taken of what is due to complainants, that the same be declared a lien on said judgment in their favor, and that the satisfaction of said judgment to the amount of their lien be set aside, and that said Hittson be decreed to pay the sum found to be

due to them, and in default thereof, that payment of said sum be enforced by execution. Prayer for general relief.

Hittson appeared and in his answer disclaims any knowledge as to whether complainants were partners or licensed attorneys, and as to whether they were retained to collect such note, or brought any suit thereon, or that judgment was recovered in the court or at the time stated against Patterson, or an appeal was prayed, or bond filed in the district court, or that such an appeal was dismissed and execution issued as stated in the bill, and submits to strict proof.

Admits that he was sued and impleaded with Patterson and Singer by one Arnold for the use of said Shortridge, and that judgment was obtained against him in said district court at the term and for the amount stated. But as to what attorneys brought the same, or whether on an appeal bond does not know. Admits that he paid and satisfied the judgment so obtained in said district court against him and said Shortridge, satisfied the same on the records on the 12th of December, 1874, but knows nothing as to the satisfaction of said judgment in the probate court, but submits to strict proof, etc. That the defendant knows nothing of any services rendered by complainants to Shortridge in such suits, or if rendered, how much they were worth, and submits to proof, etc. Denies all knowledge that said Shortridge was indebted to complainants for services in said suit in said district court at the time of the entry of satisfaction of the judgment therein and all notice of the same, and that the complainants had, prior to such payment, given to defendant any notice of such claim, or filed any petition or notice in said cause, in which the judgment was so satisfied in said district court, to enforce the lien, or notify defendant thereof. Denies that he procured satisfaction to be entered by Shortridge of the judgment in said district court with a view to cheat the defendants. Submits that complainants do not show themselves entitled to relief, that the bill shows defendant was not a party to said suit in the probate court in which judgment was rendered against Patterson, and

that said Putnam alone performed the services as stated in the bill in which judgment was obtained against the defendant in the district court, and the defendant ought not to be charged, etc., and claims the same benefit as though he had demurred, and denies complainant's right to enforce lien, etc.

After replication filed, the cause was referred to a master to take proof. The hearing was upon the bill, answer, replication and master's report, and a decree rendered that the complainants were, at the time of the filing of the bill, and the entry of satisfaction of the judgments, entitled to liens on the judgments in the district and probate court in the bill mentioned, which was well known to the defendants, and declaring the same to be a lien to the extent of the sum of $199, and setting aside and canceling the entry of satisfaction to that extent, on the said judgment in the district court, and awarding execution for the said sum and costs, if not paid in twenty days.

It appeared in the evidence, among other things, that the complainants had been retained as alleged in the bill; that the complainants had advanced $2 in costs; that the services in the probate court were worth the sum of $85; on the appeal in the district court, $25; and in the action on the bond, including certain expenditures, $87. That both complainants appeared as copartners in the action on the note, but in the district court, Mr. Putnam alone appeared in behalf of the firm. That Mr. Browne was not a member of the bar, although a copartner of Mr. Putnam and equally interested with him in the fees.

Messrs. MILLER & CLOUGH, for appellant.

Messrs. BROWNE & PUTNAM, *pro se.*

THATCHER, C. J. The law is jealous of her votaries. Her chosen priests alone are permitted to enter her solemn temple, and minister at her sacred altars. Without her sanction, courts should not recognize the right of any one to appear and prosecute or defend causes which necessarily

relate to so many of the varied and complex concerns of life, from the highest and most important, to the lowest and least significant. A lawyer, duly accredited, holds a station among men that stimulates him to a strict and honest performance of his imperious duties.. The pride and dignity of character inspired by the high and honorable position to which he, by virtue of his office, has attained, affords a guaranty that the great interests committed to his hands affecting alike the rights of person and property, will be managed with scrupulous integrity and with the utmost skill and ability he can command. Animated by an enlightened sense of the delicate and grave responsibilities resting upon the legal profession, our legislators, with provident care, have thrown around the practice of law in Colorado extraordinary safeguards for the purpose of protecting both the public and the members of a worthy profession.

To entitle any one applying for admission to the bar of Colorado to a license, it is necessary that this court shall be satisfied by competent evidence prescribed by statute that the applicant is a person of good moral character and either that he has been engaged in the study of law for two successive years prior to the making of such application, or " that he has been regularly admitted an attorney at law in a court of record within the United States." The purpose of these requirements is manifestly two-fold. The license furnishes the evidence that the law demands for the security of the public, *first*, that the holder thereof is a person of probity of character ; and *second*, that he is skilled in the law, and, therefore, qualified to practice as an attorney and counselor. Every person without license is prohibited from " commencing, conducting or defending any action, suit or plaint, in which he is not a party concerned in any court of record (the county court excepted) within this State." R. S., p. 65, § 1.

Any lawyer when admitted must also be enrolled to entitle him to practice. R. S., p. 66, §§ 4 and 5.

Thus carefully have our law makers adopted every precau-
tionary measure to assure the pure and safe administration
of justice and to shield suitors in our courts from the fraud
and imposition that might otherwise be practiced upon
them by persons who are either dishonest or not learned in
the law, persons who not acting under the sanctity of an
oath, and not being officers of, cannot be held to such im-
mediate and strict accountability by, the court.

Not only are unlicensed persons prohibited from practic-
ing, but the statute also provides that "if any person not
licensed as aforesaid shall receive any money or species of
property as a fee or compensation for services rendered by
him as an attorney or counselor at law within this State,
all money so received by him shall be considered as money
received to the use of the person paying the same, and may
be recovered back with costs of suit, by an action for money
had and received  *  *  *  and the person receiving such
money or property shall forfeit three-fold the amount or
value thereof," (R. S., p. 68, § 12) to be recovered by an
action of debt *qui tam*.

Even without the statute just quoted, an unlicensed per-
son can, under our law, recover no compensation for pro-
fessional services.  "In general, when the law prohibits an
act, no one can have the aid of the law to recover compen-
sation for doing it."  *Ames* v. *Gilman*, 10 Metc. 243.

One who has the temerity to attempt to practice in the
face of the statutory prohibition not only cannot recover
for his services, but in the event of collection without suit,
he subjects himself to the penalty fixed by law.

If either Browne or Putnam were incapable of entering
into a valid contract when the suit on the appeal bond was
brought and the services were rendered in the district court
in said suit, a joint right of action could not have accrued
to them for such services.  A joint right of action, in a law
firm, for professional services implies a joint right to con-
tract and a consequent joint right to sue.

It is not enough that one member of the firm in his indi-

vidual capacity might have entered into a valid contract and enforced the same in court.

By our statute an unlicensed person labors under a disability to contract or sue.

To affirm the decree of the court below is to assert that the disability may be removed and the law evaded by an unlicensed person entering into partnership with a duly admitted attorney. Unless Browne and Putnam, Browne not being a member of the bar when the services were performed, could have maintained an action against Polly A. Shortridge for fees claimed to be due in the suit upon the appeal bond, Browne and Putnam are not entitled to a lien upon the judgment obtained in that suit. That such a joint suit could not have been maintained, one of the partners being under a statutory disability, we think is apparent. "If two sue as co-plaintiffs, in a personal action, a plea that *one* of them is an outlaw will, if established, defeat or suspend the suit as to both. For as they sue jointly, and of course assert a joint right, they must recover jointly or not at all in that suit.", Gould's Pleadings, 225 ; Com. Digest, Abatement, E. 2.

The authorities upon which the appellees rely for the contrary doctrine when closely examined will be found to be mere *obiter dicta*.

In the case of *Harland et al.* v. *Libienthal*, 53 N. Y. 440, in which the court held that a law firm, one member of which had been duly licensed, may recover in a joint action for services rendered by the firm, there was the absence of a prohibitory statute. The remarks of the court, that if there had been a prohibitory statute or a rule of court forbidding an unlicensed attorney to practice, the fact that one member of the firm had been duly admitted would relieve from its effect, were entirely extrajudicial.

In the case of *Turner & Smith* v. *Reynall,* 14 C. B. (N. S.) 328, the firm of Turner & Smith, medical practitioners, brought an action against a patient for attendance and medicine. When the cause of action arose, Turner alone

was registered. The day before the suit was brought, Smith had himself registered. The act of parliament (32, §§ 21 and 22 Vict., ch. 98) provided that "no person shall be entitled to recover any charge in any court of law for any medical or surgical advice, attendance or for any medicine *unless he shall prove upon the trial that he is registered under the act.*" As both had registered before suit brought, ERILE, C. J., said, "Both, therefore, had strictly complied with the words of the act, and both  *  *  *  were entitled to sue." It will be readily seen that neither of these cases is, in principle, analogous to the one before us. The supreme court of Illinois, construing a statute like our own, declares that if an attorney has "incurred any liability by practicing and receiving fees, or if he seeks to recover for services performed as an attorney before his name was entered upon the roll, the court could not aid him by permitting the entry to be made *nunc pro tunc. Ex parte Fellows*, 2 Scam. 369.

In *Robb* v. *Smith*, 3 Scam. 47, construing the same act, the court, after declaring that the statute has "imposed a disability upon 'the agent'" which destroys all right, privilege and capacity in him to assume or act in that character in relation to the conduct of legal proceedings, says, "this act was passed, we believe, in a spirit of liberality toward suitors, and for their protection against the practices of those who might seduce their confidence and induce them to trust the latter in the management of important interests when suitors could not possibly ascertain the skill and qualifications of those in whom they confided, or their acquaintance with the most intricate, difficult and important of human sciences." Mr. Browne could, under no circumstances, have a right of action for professional services rendered while he was not a member of the Colorado bar.

To say that he may circuitously and jointly with another have such right by forming a copartnership with one under no such disability is to declare that he may defeat the evident purpose of the statute, that he may do that indirectly which the law will not permit him to do directly. The

most absurd consequences would result. One under the ban of the statute, either by reason of not being a regularly admitted attorney or by reason of being disbarred, might at once form a copartnership with a licensed lawyer and reap the fruits to which he only is entitled under the statute who possesses an unrevoked certificate of admission which proclaims to the public that its holder is a man of probity and learned in the law.

Whether section 17, chapter VIII, R. S., 1868, *in the absence of notice to the judgment debtor,* gives an attorney a lien upon the judgment obtained by such attorney, is a question not now necessary to determine.

The decree of the district court must be reversed with costs and the cause remanded, with directions to the court below to dismiss the bill without prejudice to Mr. Putnam.

*Reversed.*

WELLS, J.   An unlicensed person cannot be permitted to assume the calling and office of an attorney by the mere shift of using the name of a qualified person.

The association of a licensed attorney with one who does not fill this character will not give a joint action in the names of the two, for counsel rendered or service performed by either or both, nor afford a lien, to the two, for fees in respect of such counsel or services, upon judgment recovered, by the qualified person.

In the present case, therefore, if there is any lien for the services rendered in the action upon the appeal bond, it is in favor of Mr. Putnam alone, for the value of the services which he individually performed, and as the evidence does not distinctly inform us what his services were in that action, or their value, it is impossible to save his rights in the present proceedings, even if the case stood in unexceptionable attitude in all other respects.

Doubtless the complainants may have their joint action against Mrs. Shortridge for the value of their services rendered in the first action, but having reference to the

terms of the appeal bond, in which he became surety and upon which alone his liability can be predicated, I do not see how the appellant can be charged with this demand.

For these reasons I concur in the result announced in the opinion of the chief justice. I do not, however, at present agree that an attorney may not, in a conceivable case, enforce a lien upon the judgment given on an appeal or writ of error, or on the bond given in such case, for fees accruing to him in the original action, though he had no connection with the subsequent process.