Payne and another, Appellants, vs. Volkman and another, Respondents.

*February 15—April 8, 1924.*

*Brokers: Licenses: Validity of statute: Recovery of commission by non-licensed broker: Nonresidents: Joint contracts: Entire or severable contract.*

1. Sec. 136.01, Stats. 1923, providing that no person shall engage in the business of selling real estate without first procuring a license, while drastic, is not so unreasonable as to be void. p. 419.
2. There can be no recovery by two real-estate brokers upon a joint contract for the sale of a store business and the real estate connected therewith to a co-operative association to be organized by them, where one of the brokers, a resident of this state, had a license under sec. 136.01, Stats. 1923, but the other, a nonresident, did not, as the contract, being void as to one of the brokers, is void *in toto.* p. 419.
3. The dominant consideration for the making of such contract being the sale of the realty, it was entire and not severable, and, being void as to the sale of the realty, the brokers were not entitled to recover a commission upon the value of the personal property sold nor to recover the expenses incidental to the organizing of the association. p. 419.

APPEAL from a judgment of the circuit court for Rusk county: JAMES WICKHAM, Circuit Judge. *Affirmed.*

The plaintiff *Krcma* was a licensed real-estate broker residing at Ladysmith, Wisconsin. The plaintiff *Payne* was a promoter living in Minneapolis. The defendants were copartners as Volkman Brothers, doing a general mercantile business at Ladysmith, Rusk county, Wisconsin. A large amount of evidentiary matter is recited in the complaint. We shall state only so much of the complaint as is necessary to an understanding of the question raised, and that in substance and not in the language of the complaint itself.

It appears that the defendants were desirous of disposing of their business, including the real estate used in connec-

tion therewith.   After a series of negotiations the plaintiffs
procured from the defendants the following proposal:

"*Merchants' Proposal to the People of Ladysmith
and Vicinity.*

"Believing that co-operative buying and selling, on the
American, Rochdale plan is the most just way of doing
business, we hereby make the following proposition, viz.:

"1st.  As soon as approximately one hundred and twenty-
five shares of capital stock of two hundred dollars, each
have been subscribed for, and a co-operative company,
known as the Ladysmith Co-operative Mercantile Com-
pany, or some other appropriate name, has been incorporated
in accordance with the laws of this state, we agree to turn
over to said company our entire stock of merchandise, fix-
tures, and unexpired fire insurance policies.

"Also the whole store building, now owned and occupied
by us, and the meat market, together with all outbuildings
and sheds, and both lots on which said buildings stand.

"2d.  An invoice of said stock shall be taken by two per-
sons, one chosen by the president of the co-operative com-
pany, and one by us, or we will act ourselves; and the prices
allowed for said goods shall be on the basis of present
wholesale or market value.   The fixtures, and such goods
as are old, shelf-worn, or damaged, shall be appraised by
the two persons so chosen, and in case they cannot agree,
they to choose a third party to help them decide the real
value of such goods and fixtures.   The value of the real
estate to be decided by the arbitration, or other persons
chosen in the same manner.

"We also agree to take five shares of stock in said com-
pany.

"3d.  We agree to give a clear bill of sale to the co-opera-
tive company, at the time the valuation is determined, of
the stock, fixtures, and a warranty deed of the real estate,
and settlement shall be made by the directors of said com-
pany on the following basis, to wit:

"We are to receive, in cash and subscription notes, such
portion of the proceeds of the shares of stock sold and set-
tled for as shall equal the agreed value of the stock and
fixtures, and at least fifty per cent. of the appraised value
of the real estate, and a mortgage on said real estate to
settle the unpaid balance thereon.

"4th. The membership as collected by the solicitors may be used by them for organizing expense, and shall cover all expense of organizing to said company.

"5th. We agree not to dispose of any merchandise by special or reduction-sale methods while this company is being organized.

"6th. That no member of this company shall hold more than one thousand dollars in shares nor have more than one vote.

"In witness whereof, we have hereunto set our hands this 9th day of July, 1921, at the city of Ladysmith, county of Rusk, and state of Wisconsin.

"CHAS. VOLKMAN.
"FRED VOLKMAN."

At or about the same time the plaintiffs entered into a contract with the defendants of which the following is a copy:

*"Agreement.*

"It is hereby agreed between *J. A. Payne* of Minneapolis, Minnesota, and *John G. Krcma* of Ladysmith, Wisconsin, parties of the first part, and Volkman Brothers of Ladysmith, Wisconsin, parties of the second part, that the parties of the first part are to do the soliciting to sell the stock, and fixtures, and other property according to a proposition of even date herewith, belonging to the parties of the second part, and to furnish all literature, by-laws, fees necessary to incorporate a co-operative company, according to law, and to complete the sale.

"Said second parties agree to pay the parties of the first part a commission of seven per cent. (in cash) on all property sold as soon as said company is organized and have settled for said property.

"Either party has the right to terminate this contract at the end of two weeks, providing that not sufficient subscriptions have been secured to organize the company. If there has been, then a reasonable time shall be given the parties of the first part to complete the sale.

"Said first parties agree to divide all receipts from this sale equally between themselves, and to pay all the expense on the same basis.

"In witness whereof, we have hereunto set our hands this 9th day of July, 1921.

"CHAS. VOLKMAN.
"FRED VOLKMAN.
"J. A. PAYNE.
"JOHN G. KRCMA."

In reliance upon this agreement the plaintiffs obtained a considerable number of subscribers to and purchasers of the stock of the proposed corporation; among others, the defendants subscribed for five shares of such stock—two and one-half shares each.   On the 3d day of August, 1921, a meeting of about thirty farmers and residents of Rusk county, Wisconsin, was called at Ladysmith.   At this meeting the proposal made by the defendants was submitted to those present.   It was there decided to form a co-operative company to be known as the Rusk County Co-operative Store Company, with a capital stock of $50,000, divided into 250 shares of the par value of $200 each.   The proposal made by the defendants was accepted by the meeting on behalf of the proposed corporation.   The plaintiffs were hired on behalf of the proposed corporation as solicitors to secure the necessary subscriptions to the capital stock of the company; all stock subscribed for to be paid in cash, by check, or by subscription notes, payable to the order of the company.

In addition to the $200 per share each member was to pay a $10 membership fee, which was to be paid to the plaintiffs for their services in selling the stock and procuring subscribers and the cost of incorporation.   The plaintiffs thereupon entered upon the performance of the agreement, and between the 9th day of July, 1921, and the 30th day of September, 1921, ·secured purchasers and subscribers for 132 shares of the capital stock of the company at $200 per share, and obtained 127 stockholders and members for such company, and the plaintiffs allege that they fully carried out their agreement.   The subscriptions were paid in cash, by

check, or by subscription note—in cash the sum of $1,500, the sum of $24,900 in subscription notes, and upon the membership fee $310 in cash and $960 in notes.    On the 1st day of November, 1921, the company was incorporated under the name of the Rusk County Co-operative Store Company, with a capital stock of $50,000, divided into 250 shares of the par value of $200 per share, the expenses of the plaintiffs during their solicitations for subscriptions and ·incorporation of the company being paid by them.    It is alleged that since the 1st day of November, 1921, the company has been duly and fully organized.    It is further alleged that on the 19th day of December, 1921, a meeting of the corporation, the officers, directors, and agents thereof, was held, at which time there was tendered to the defendants $1,500 in cash and subscription notes amounting to $24,900 in performance of the agreement made under date of July 9, 1921 ; that it was proposed to ascertain the purchase price in accordance with the terms of the contract.    The defendants refused to accept the cash or the subscription notes or to attempt to fix, determine, or agree upon the purchase price.. It is alleged that the fair, reasonable market and sale price of the real estate of the defendants is $32,000 ; the value of the equipment and fixtures is $2,000; that the value of the goods upon the basis of ordinary market wholesale cost was $6,000; and that the reasonable market value of the entire property proposed to be conveyed to the corporation was $40,000.    It was then alleged that the defendants were indebted to the plaintiff under their contract in the sum of $2,800, being seven per cent. upon the sale price and value of the real estate and personal property covered by the proposal.    There is a second cause of action for $1,270 for the return of the membership fee, the dissolution of the corporation being necessary by reason of the refusal of the defendants to carry out their contract; and there is a third cause of action for $1,168.20, being the expenses incurred by the plaintiffs for hotel bills, transportation, etc., which

would have been paid out of the membership fee had the contract been carried out.

A jury was called, a witness sworn, when the defendants interposed a demurrer *ore tenus*. There was a colloquy between the court and counsel which disclosed the following facts: that the plaintiff *Payne* had no license for transacting a real-estate business in the state of Wisconsin, but that the plaintiff *Krcma* was a licensed real-estate broker; that no authorization was procured from the department of securities of the railroad commission for authority to sell stock, it being the contention of the plaintiffs that a sale of stock in a co-operative company was not covered by the statute in that respect. It was also contended by the plaintiffs that under the contract a sale was made to the company by the defendants and that therefore a real-estate license was not necessary. It is also stated that the only thing done was to have the proposed members sign the subscription list. The court inquired as to whether or not anything had been done by way of the corporation accepting the subscriptions or determining who were its stockholders. It appearing that no cash had been paid in excepting the $1,500, it was the opinion of the court that the corporation was not authorized to transact business and that the defendants were not liable for their refusal to make a conveyance to a company not properly organized. Upon the allegations of the complaint and statements of counsel the demurrer *ore tenus* was sustained and judgment was entered upon the merits dismissing the plaintiffs' complaint, it being apparent that the defects could not be cured by amendment. From the judgment so entered the plaintiffs appeal.

For the appellants the cause was submitted on the brief of *C. G. Cannon* of Appleton.

For the respondents there was a brief by *T. M. Thomas* and *A. W. Fisher,* both of Ladysmith, and oral argument by *Mr. Thomas.*

ROSENBERRY, J.    The trial court sustained the demurrer upon two principal grounds: (1st) that it did not appear from the complaint that the plaintiffs were licensed real-estate brokers under sub. (5), sec. 1636—225, Stats. (now ch. 136), and are therefore not entitled to collect a commission as such; (2d) that it appears upon the face of the complaint and upon the statements made by counsel that the corporation was not authorized to transact business because of its failure to comply with sec. 1773, which provides:

"No such corporation shall transact business with any others than its members until at least one half of its capital stock shall have been duly subscribed and at least twenty per centum of its said capital stock actually paid in."

We find it necessary to consider the first question only. It appears that the plaintiff *Payne* was a resident of the state of Minnesota and had no real-estate broker's license. The contract is upon its face a joint contract made by *Payne* and *Krcma* with the defendants. The statute relating to real-estate brokers (ch. 136) is very broad. It defines a real-estate broker as follows:

"Any person, firm or corporation, not excluded by subsection (3) of this section [which relates mainly to receivers, trustees, etc.], who, for another, and for commission money or other thing of value: (a) sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of an interest or estate in real estate. . . ."

The prohibitory language is as follows:

"On and after January 1, 1920, no person, firm or corporation shall engage in or follow the business or occupation of, or advertise or hold himself or itself out as or shall act temporarily or otherwise as a real-estate broker or real-estate salesman in this state, without first procuring a license therefor as provided in this section."

Under the terms of this law there can be no question but that the plaintiff *Payne* was prohibited from contracting to render services as a real-estate broker. It appears that *Krcma,* who was a resident of Ladysmith, had a real-estate

broker's license. While a licensed real-estate broker is permitted to employ agents who are designated real-estate salesmen, the law does not authorize a partner to engage in the real-estate business unless he joins in the application. The contract is joint, and if invalid as to the plaintiff *Payne* it must be held invalid *in toto*. While the statute is drastic, we canot say that it is so unreasonable as to be void. The evil aimed at was very great. Citizens of this state were being defrauded in large amounts through the activities of so-called real-estate brokers, many of whom were not citizens of this state and who came here for the purpose of exploiting its people. We are forced to the conclusion that the plaintiffs cannot recover upon this contract. *De Wit v. Lander,* 72 Wis. 120, 39 N. W. 349; 3 Williston, Contracts, p. 3072, § 1766; 12 L. R. A. N. s. 575, note.

It is urged that the contract was executed, that the plaintiffs had performed the agreements therein contained by them to be performed, and that if the contract be held void as to the real estate the plaintiffs are entitled to recover at least their commission upon the appraised value of the personal property. It appears that the real estate is of the estimated value of $32,000, the fixtures $2,000, and the stock of merchandise $6,000. It requires no argument to show that the sale of the real estate was the dominant consideration for the making of the contract. It was a contract primarily to sell the property of defendants to a corporation to be organized by plaintiffs. The organization of the corporation was an incident to the main contractual purpose. The contract is an entire one and is not severable. *Sixta v. Ontonagon Valley L. Co.* 148 Wis. 186, 134 N. W. 341; 4 Page, Contracts (2d ed.) § 2089, note 7, cases; also 5 Page, Contracts (2d ed.) § 2995, note 5, cases.

If defendants are not liable upon the contract they are not liable otherwise on the second and third causes of action. This disposes of the case, and we shall not consider the other questions raised.

*By the Court.*—Judgment appealed from is affirmed.