## No. 12,913.

### SCHWARTZ v. WEINER.
(30 P. [2d] 1110)

Decided December 4, 1933. Rehearing denied February 19, 1934.
Opinion adhered to en banc March 19, 1934.

252

Messrs. BLOUNT, SILVERSTEIN & ROSNER, for plaintiff in error.

Mr. FOSTER CLINE, Mr. GEORGE A. TROUT, for defendant in error.

Mr. ERNEST L. RHOADS, Mr. BERNARD J. SEEMAN, amici curiae.

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties are hereinafter referred to as Schwartz and Weiner.

Weiner, alleging that he had been employed by Schwartz to assist in the purchase of an apartment house, that he did so, that the property was purchased, and that

he had been promised compensation for his services but that payment had been refused, sued for $875 as the reasonable value thereof. Schwartz denied generally, and further alleged that at the time in question Weiner had no license to engage in the business of real estate broker. Weiner admitted he had no license, alleged that none was necessary because he was not in the business, and averred that this was the only transaction of the kind in which he had engaged. Schwartz' motion for judgment on the pleadings was overruled and the cause tried to a jury. At the close of his evidence Weiner was permitted, over objection, to amend his complaint to a demand for $1,250. On a verdict in his favor for $875 judgment was entered. To review that judgment Schwartz prosecutes this writ.

The contentions here made under the assignments may be thus summarized: (1) The motion for judgment on the pleadings should have been sustained; (2) The motion to amend the complaint should have been overruled; (3) The verdict is unsupported by the evidence and is excessive.

■■ 1. On this point the position of counsel for Schwartz is, first, that one cannot maintain a suit to collect pay for a forbidden service; second, that under our statute one not licensed as a real estate broker, although not in fact in the business, may not lawfully engage in a single, isolated transaction. The first proposition is correct. *Hittson v. Browne,* 3 Colo. 304; *Payne v. Volkman,* 183 Wis. 412, 198 N. W. 438. We address ourselves to the second. Section 1, chapter 147, p. 423, S. L. 1925, makes it unlawful for a person to engage in the business of real estate broker or salesman without a license from the secretary of state. Section 2, Id., defines the terms. Under these sections one who engaged in the business, irrespective of actual transactions, must have a license or incur the prescribed penalty. *Horsley v. Woodley,* 12 Ga. App. 456, 78 S. E. 260. And one not in the business needed no license for his protection, though engaging irregularly in isolated transactions. *Commonwealth v.*

*White,* 260 Mass. 300, 157 N. E. 597; *Miller v. Stevens,* 224 Mich. 626, 195 N. W. 481; 56 A. L. R., p. 484, §III, par. b, and par. h. But section 4 of said chapter 147, provides that two acts, or offers to act, "within any calendar year," shall constitute the person so acting or offering, a broker or salesman. This section was repealed by section 1, chapter 149, p. 582, S. L. 1927. Classifying said section 4 as a "permissive" statute, counsel for Schwartz argue that its repeal had the effect of penalizing every person who engaged in a single real estate transaction without a license. Without that fatal "permissive" not a case cited in support of this contention is in point. We select the three best. In *Roman v. Lobe,* 243 N. Y. 51, 152 N. E. 461, 50 A. L. R. 1329, the opinion is by Judge Cordozo and is all that fact might lead us to expect. But the plaintiff there was admittedly a broker, who was claiming a commission on a transaction between the date of the expiration of his license and the date of its renewal. Moreover, the sole question was, as the court states, "whether the requirement of a license is a constitutional exercise of a legislative power."

In *Haas v. Greenwald,* 196 Cal. 236, 237 Pac. 38, the statute involved provided that "One act, for a compensation, * * * shall constitute the person * * * a real estate broker." There three persons engaged in a forbidden transaction and sued for compensation. One had no license. He was denied recovery because of the statute above quoted, and because a part of the consideration was unlawful the entire contract was held void and the unlicensed dealer's licensed associates also lost. The decision upholds the statute but does not intimate that the claim would have been doubtful in the absence of express legislation.

■ *Bank for Savings v. Collector* [*Field*], 3 Wall. 495, 18 L. Ed. 207, is cited in support of the proposition that repeal of a permission constitutes a prohibition. Granted, but that is not the case. For the reasons there given, however, the repeal of a prohibition constitutes a

permission. That is this case exactly. There is no hint in said section 4 of "permission" to do anything. The language is "Two acts * * * shall constitute the person * * * a real estate broker"; and section 21 Id., provides that "Any person * * * acting as real estate broker * * * without having obtained a license * * * shall upon conviction * * * be punished" by a fine of $100 to $500 or imprisonment for not more than six months, or both. The clear intent was to penalize every unlicensed person who engaged in the business, and strip every unlicensed person, who committed two acts, of the defense that he was not in the business. The former was punished irrespective of the number of his transactions, and the latter was conclusively presumed to be in the business because of two transactions. Section 4 has nothing to do with those actually in the business. It deals with persons in other occupations who merely make occasional forays into the field, and who, but for this section, would be untouched by the act, and restricts their activities to a single incursion. It is clearly a prohibition and its repeal left Weiner as free as if it had never been passed. He needed no license unless he was in the business, and, admittedly, he was not. The motion for judgment on the pleadings was properly overruled.

■ 2. We need give no further attention to this objection than to observe that Weiner obtained nothing under the amendment which he might not have obtained under his original complaint, and the record discloses no possible influence of that amendment on the verdict.

■ 3. On this point it would probably suffice to say that there is evidence to support the verdict. It is skillfully analyzed, minimized, and condemned, and not without reason, by counsel for Schwartz, but we fail to discover, nevertheless, that it was not within the province of the jury. The apartment house carried a first mortgage of $24,000 which was in process of foreclosure and on which the redemption period had almost expired. Weiner's aunt had a second mortgage thereon of $3,000

and owed his father a note of $2,000. The father's prospects of payment of the note were about to vanish with the extinction of the second mortgage, apparently the aunt's only available assets. When the deal by which Schwartz took over the property was consummated he paid the aunt $1,000 for her second mortgage and a quitclaim deed from the record owners. Of this sum she paid the father $900 for which she secured the return of her note. Counsel for Schwartz contends that Weiner has thus secured a commission of $875 for negotiating a $1,000 transaction, and there is evidence to support that contention. There is, however, evidence to support the position of Weiner that he was helping Schwartz to secure the property and that the second mortgage and the debt from the aunt to the father were but incidents in the major transaction, in which side issues Weiner was not primarily interested. It seems reasonable to suppose that, under the circumstances, Schwartz could not have been greatly concerned in obtaining a second mortgage, even for one-third its face, which was just on the verge of extinction by the foreclosure of a first for eight times that amount. Weiner was a young man who worked "as an electrician," and had done so for seven years last past. He knew Schwartz and did work for him, both before and after this transaction. The latter was a real estate broker, had been in that business for about ten years, and owned considerable real estate. He dealt not only for himself, but for his wife whose power of attorney he held, and in whose name he eventually took this title. He obtained from Weiner his first, and much of his later, information about the property in question. It was shown him by Weiner, who was accompanied by his father, and who later took Schwartz to see his aunt. In fact Weiner was generally present as the negotiations progressed and was present at their culmination. He first brought the matter to the attention of Schwartz while the broker was getting out of a "Russian bath." Schwartz himself does not say that Weiner proposed to sell him

a second mortgage. He says, "He sat next to me and asked me if I wanted to buy a piece of property that was cheap." It is said that the complaint claimed compensation for assisting in the purchase of the property whereas the instructions limited compensation to Weiner's services in furnishing "information to the defendant concerning the apartment house purchased by the defendant." Since furnishing information was but one phase of assisting Schwartz in the purchase the error, if any, was in favor of Schwartz.

 It is also contended that tendered instructions 2 and 3 should have been given, and that instruction 4, given, was erroneous. It is sufficient to say, as to these, that no question of the correctness of the court's rulings on instructions, given or refused, was raised by the motion for a new trial or is presented by the assignments.

On the whole this was a case for the jury. If any prejudicial error was committed it is not preserved by the record.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE BOUCK concur.

### On Petition for Rehearing.

February 19, 1934, rehearing denied en banc. Mr. Justice Bouck withdraws his concurrence and now dissents. Mr. Justice Butler, Mr. Justice Bouck and Mr. Justice Holland think the rehearing should be granted.

### On Application for Reconsideration and Further Rehearing.

March 19, 1934, case transferred to the court en banc, there considered and judgment affirmed. Former opinion adhered to.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE CAMPBELL, MR. JUSTICE BURKE and MR. JUSTICE HILLIARD concur.

Mr. Justice Butler, Mr. Justice Bouck and Mr. Justice Holland dissent.

Mr. Justice Bouck, dissenting.

From the judgment of affirmance I dissent. I think the judgment should be reversed, the verdict recovered by Weiner against Schwartz in the district court should be set aside, and final judgment should be entered here in favor of Schwartz.

Weiner's complaint alleges that "on or about December 5, 1930, plaintiff and defendant had a conversation wherein plaintiff and defendant stated, agreed and contracted with each other that plaintiff should assist the defendant in the purchase of an apartment house," and that "plaintiff did assist defendant in purchasing" it, that "defendant has promised to pay plaintiff for said services, but fails, neglects and refuses to pay the plaintiff."

Schwartz's answer couples with a general denial a further answer by way of affirmative defense, asserting that the plaintiff did not "have or obtain any license from the Secretary of State of the State of Colorado to engage in the business *or capacity* of real estate broker or real estate salesman" as required by law, and that he "had no right, power or authority to engage in the business *or act in the capacity of*" such a broker or salesman, "nor to receive any compensation for any alleged services as such." In his replication, the plaintiff admits that he did not have or obtain any such license, and alleges that "he was not engaged in the business *or capacity* of a real estate broker or real estate salesman," and that "the transaction complained of was *the only transaction of a like kind in which the said plaintiff participated or acted as broker or salesman,*" and that "it was not necessary for plaintiff to secure a license in accordance with" the law. (Italics throughout this opinion are mine.)

While the pleadings refer specifically only to chapter

147 of S. L. 1925, and chapter 149 of S. L. 1927, it developed on the oral argument before a department, consisting of Mr. Chief Justice Adams, Mr. Justice Burke and myself, that the above mentioned chapters must be read as amended by chapter 149 of S. L. 1929. Both sides have now argued the case on the basis of the present state of the law, and this is particularly stressed in the brief of counsel appearing herein by leave of this court as amici curiae. My oversight in not giving effect to the 1929 amendment, which latter is not mentioned in Mr. Justice Burke's opinion at all, but which as I think should properly be decisive of this case, was responsible for my error.

It is at once apparent that the correct conclusion necessarily depends upon a proper interpretation and application of the act of 1925 *as amended in 1929*. So much of the act as is not purely administrative matter, or is clearly not involved, will therefore be quoted verbatim in its present form:

"It shall be unlawful for any person * * * to engage in the business *or capacity* of real estate broker * * * in this state without first having obtained a license from the Secretary of State * * *. No person shall be granted a license until he shall have passed a satisfactory examination and shall have established that he is trustworthy and bears a good reputation for good and fair dealing and is competent to transact the business of a real estate broker * * * in such manner as to safeguard the interests of the public * * *.

"A real estate broker within the meaning of this act is any person * * * who for compensation or valuable consideration sells or exchanges or offers for sale or exchange, buys or offers to buy, or who negotiates the purchase or sale or exchange, of real estate, or who leases or offers to lease, or rents or offers to rent any real estate or improvements thereon for *another or others* * * *.

"The provisions of this Act shall not apply to any person, firm, partnership, association or corporation who as

owner or lessor shall perform any of the acts aforesaid with reference to property owned by them; nor shall it be held to include a receiver, trustee in bankrutpcy, administrator, executor, guardian, conservator or any person selling real estate under any order of Court, or trustee selling under a Deed of Trust.

"There shall be a Board of three members appointed by the governor which Board shall assist and advise said Secretary of State in the administration of this Act. This Board shall be known as the Real Estate Brokers Board [the makeup and appointment of which are then provided for] * * *.

"*The said Board shall conduct or cause to be conducted examinations to determine the competency of applicants for license.* No license shall be issued until the application for the license shall have been reported upon favorably by a majority of the Real Estate Brokers Board to the Secretary of State. No license shall be suspended or revoked until said Brokers [Board] shall have made its majority recommendation to the Secretary of State * * *.

"The Secretary of State and the Real Estate Brokers Board are hereby authorized to require and procure any and all such satisfactory proof as shall be deemed desirable in reference to the truthfulness, honesty and competency of any applicant for a real estate broker's * * * license, or if the applicant be a firm, partnership, association or corporation, of any officer or member of such applicant prior to the issuance of such license. * * *

"The Secretary of State may upon his own motion, and shall upon the verified complaint in writing of any person, investigate the actions of any real estate broker or real estate salesman or any person who shall assume to act *in either such capacity* within this state [then follow detailed provisions for suspension and revocation of the licenses] * * *."

It will thus be seen, from a reading of the law, that the legislature of Colorado deliberately evolved a carefully

worded regulatory statute governing transactions which past history had shown to be peculiarly subject to abuse, not only at the hands of those in the permanent business of real estate broker or salesman, and those devoting a substantial part of their time thereto as a partial vocation, but also to the abuse of individuals who have not previously engaged in such a transaction. The worst abuse may come from a member of the latter class. That this was the fundamental thought of the legislature seems undeniable when we note the specific provisions enacted by three successive sessions of the General Assembly.

There seems to be no ambiguity about the language as it appears on the statute books today. It calls for neither construction nor interpretation. There is no uncertainty of meaning such as would require that we go into the history and evolution of the act. But if we did, it would merely "make assurance doubly sure."

Thus the original act (S. L. 1925, page 424, §2) defined a real estate broker in terms that clearly related to those dealing with "any real estate *for others as a whole or partial vocation,*" distinctly implying plural transactions; and *two* acts (the smallest possible number greater than the singular) for a compensation or valuable consideration in relation to real estate were made to *"constitute the person * * * a real estate broker * * * within the meaning of this act."*

In 1927 the legislature repealed the latter or "two-acts" provision (original section 4), which had obviously been enacted that none might escape regulation except those engaging in a single act or transaction.

Counsel for Weiner, with some degree of plausibility, argue that the 1927 repeal indicated a purpose to see that the person who engaged in only *"two acts"* was thereby relieved altogether from the operation of the statute, unless it were shown that the person is engaged in the *business* of a real estate broker or salesman. I think the contrary is true, namely, that the legislature decided not to await a second transaction, but to let the very first

transaction subject a person to regulation. This view appears to represent the only logical inference from a careful reading of the present statute as a whole. The aforesaid misinterpretation by Weiner's counsel may well have been erroneously indulged in by others prior to the 1929 amendment; at any rate, we know that the legislature in that year pondered the subject with the evident view of clarifying the statute and removing all possible doubt. This it did. The changes above noted lead irresistibly to the conclusion that the term "real estate broker," as now defined, includes one who engages even in a single transaction. No other explanation will account for the elimination of the expression "for others as a whole or partial vocation," found in the 1925 law, and the substitution of the phrase "for *another* or others" by the act of 1929.

Such is the history and evolution of our real estate broker statute. It will be noticed that the existing form of our act differs widely from the acts in certain jurisdictions whence the plaintiff draws his authorities. To cite these is therefore an idle thing. In no aspect of the case at bar does it matter what would be considered the real estate broker *business* in other states (which is the question under their particular statutes), since our statute expressly concerns itself not only with the business, but (alternatively) with the *capacity* of those falling within the definition of our act in its present amended form.

Unless I am correct in the foregoing, I submit that the opinion of this court in *Rice v. Loan Co.*, 82 Colo. 163, 258 Pac. 223, is devoid of meaning.

If Weiner was a real estate broker within the express terms of our act, and if he had no license, there could be no recovery of compensation for his services. *Hittson v. Browne*, 3 Colo. 304, 309; *Payne v. Volkman*, 183 Wis. 412, 198 N. W. 438; 3 Willison on Contracts, §1766.

The pleadings before us put beyond all doubt the fact that Weiner's single transaction constituted him a real estate broker within the meaning of the 1929 amendment

as plainly intended by our state legislature, and those pleadings admit that he possessed no real estate broker's license. It therefore seems clear that the lower court erred in overruling the defendant's motion for judgment on the pleadings. According to my view, that motion was entitled to be sustained. For the reasons stated I dissent.

Mr. Justice Butler and Mr. Justice Holland concur in this opinion.