THESE parties are hereinafter referred to as Schwartz and Weiner.
Weiner, alleging that he had been employed by Schwartz to assist in the purchase of an apartment house, that he did so, that the property was purchased, and that *Page 253 
he had been promised compensation for his services but that payment had been refused, sued for $875 as the reasonable value thereof. Schwartz denied generally, and further alleged that at the time in question Weiner had no license to engage in the business of real estate broker. Weiner admitted he had no license, alleged that none was necessary because he was not in the business, and averred that this was the only transaction of the kind in which he had engaged. Schwartz' motion for judgment on the pleadings was overruled and the cause tried to a jury. At the close of his evidence Weiner was permitted, over objection, to amend his complaint to a demand for $1,250. On a verdict in his favor for $875 judgment was entered. To review that judgment Schwartz prosecutes this writ.
The contentions here made under the assignments may be thus summarized: (1) The motion for judgment on the pleadings should have been sustained; (2) The motion to amend the complaint should have been overruled; (3) The verdict is unsupported by the evidence and is excessive.
[1, 2] 1. On this point the position of counsel for Schwartz is, first, that one cannot maintain a suit to collect pay for a forbidden service; second, that under our statute one not licensed as a real estate broker, although not in fact in the business, may not lawfully engage in a single, isolated transaction. The first proposition is correct. Hittson v. Browne, 3 Colo. 304; Payne v. Volkman,183 Wis. 412, 198 N.W. 438. We address ourselves to the second. Section 1, chapter 147, p. 423, S. L. 1925, makes it unlawful for a person to engage in the business of real estate broker or salesman without a license from the secretary of state. Section 2, Id., defines the terms. Under these sections one who engaged in the business, irrespective of actual transactions, must have a license or incur the prescribed penalty. Horsley v. Woodley,12 Ga. App. 456, 78 S.E. 260. And one not in the business needed no license for his protection, though engaging irregularly in isolated transactions. Commonwealth v. *Page 254 White, 260 Mass. 300, 157 N.E. 597; Miller v. Stevens,224 Mich. 626, 195 N.W. 481; 56 A.L.R., p. 484, § III, par. b, and par. h. But section 4 of said chapter 147, provides that two acts, or offers to act, "within any calendar year," shall constitute the person so acting or offering, a broker or salesman. This section was repealed by section 1, chapter 149, p. 582, S. L. 1927. Classifying said section 4 as a "permissive" statute, counsel for Schwartz argue that its repeal had the effect of penalizing every person who engaged in a single real estate transaction without a license. Without that fatal "permissive" not a case cited in support of this contention is in point. We select the three best. In Roman v. Lobe,243 N. Y. 51, 152 N.E. 461, 50 A.L.R. 1329, the opinion is by Judge Cordozo and is all that fact might lead us to expect. But the plaintiff there was admittedly a broker, who was claiming a commission on a transaction between the date of the expiration of his license and the date of its renewal. Moreover, the sole question was, as the court states, "whether the requirement of a license is a constitutional exercise of a legislative power."
In Haas v. Greenwald, 196 Cal. 236, 237 Pac. 38, the statute involved provided that "One act, for a compensation, * * * shall constitute the person * * * a real estate broker." There three persons engaged in a forbidden transaction and sued for compensation. One had no license. He was denied recovery because of the statute above quoted, and because a part of the consideration was unlawful the entire contract was held void and the unlicensed dealer's licensed associates also lost. The decision upholds the statute but does not intimate that the claim would have been doubtful in the absence of express legislation.
[3] Bank for Savings v. Collector [Field], 3 Wall. 495, 18 L. Ed. 207, is cited in support of the proposition that repeal of a permission constitutes a prohibition. Granted, but that is not the case. For the reasons there given, however, the repeal of a prohibition constitutes a *Page 255 
permission. That is this case exactly. There is no hint in said section 4 of "permission" to do anything. The language is "Two acts * * * shall constitute the person * * * a real estate broker"; and section 21 Id., provides that "Any person * * * acting as real estate broker * * * without having obtained a license * * * shall upon conviction * * * be punished" by a fine of $100 to $500 or imprisonment for not more than six months, or both. The clear intent was to penalize every unlicensed person who engaged in the business, and strip every unlicensed person, who committed two acts, of the defense that he was not in the business. The former was punished irrespective of the number of his transactions, and the latter was conclusively presumed to be in the business because of two transactions. Section 4 has nothing to do with those actually in the business. It deals with persons in other occupations who merely make occasional forays into the field, and who, but for this section, would be untouched by the act, and restricts their activities to a single incursion. It is clearly a prohibition and its repeal left Weiner as free as if it had never been passed. He needed no license unless he was in the business, and, admittedly, he was not. The motion for judgment on the pleadings was properly overruled.
[4] 2. We need give no further attention to this objection than to observe that Weiner obtained nothing under the amendment which he might not have obtained under his original complaint, and the record discloses no possible influence of that amendment on the verdict.
[5] 3. On this point it would probably suffice to say that there is evidence to support the verdict. It is skillfully analyzed, minimized, and condemned, and not without reason, by counsel for Schwartz, but we fail to discover, nevertheless, that it was not within the province of the jury. The apartment house carried a first mortgage of $24,000 which was in process of foreclosure and on which the redemption period had almost expired. Weiner's aunt had a second mortgage thereon of $3,000 *Page 256 
and owed his father a note of $2,000. The father's prospects of payment of the note were about to vanish with the extinction of the second mortgage, apparently the aunt's only available assets. When the deal by which Schwartz took over the property was consummated he paid the aunt $1,000 for her second mortgage and a quitclaim deed from the record owners. Of this sum she paid the father $900 for which she secured the return of her note. Counsel for Schwartz contends that Weiner has thus secured a commission of $875 for negotiating a $1,000 transaction, and there is evidence to support that contention. There is, however, evidence to support the position of Weiner that he was helping Schwartz to secure the property and that the second mortgage and the debt from the aunt to the father were but incidents in the major transaction, in which side issues Weiner was not primarily interested. It seems reasonable to suppose that, under the circumstances, Schwartz could not have been greatly concerned in obtaining a second mortgage, even for one-third its face, which was just on the verge of extinction by the foreclosure of a first for eight times that amount. Weiner was a young man who worked "as an electrician," and had done so for seven years last past. He knew Schwartz and did work for him, both before and after this transaction. The latter was a real estate broker, had been in that business for about ten years, and owned considerable real estate. He dealt not only for himself, but for his wife whose power of attorney he held, and in whose name he eventually took this title. He obtained from Weiner his first, and much of his later, information about the property in question. It was. shown him by Weiner, who was accompanied by his father, and who later took Schwartz to see his aunt. In fact Weiner was generally present as the negotiations progressed and was present at their culmination. He first brought the matter to the attention of Schwartz while the broker was getting out of a "Russian bath." Schwartz himself does not say that Weiner proposed to sell him *Page 257 
a second mortgage. He says, "He sat next to me and asked me if I wanted to buy a piece of property that was cheap." It is said that the complaint claimed compensation for assisting in the purchase of the property whereas the instructions limited compensation to Weiner's services in furnishing "information to the defendant concerning the apartment house purchased by the defendant." Since furnishing information was but one phase of assisting Schwartz in the purchase the error, if any, was in favor of Schwartz.
[6] It is also contended that tendered instructions 2 and 3 should have been given, and that instruction 4, given, was erroneous. It is sufficient to say, as to these, that no question of the correctness of the court's rulings on instructions, given or refused, was raised by the motion for a new trial or is presented by the assignments.
On the whole this was a case for the jury. If any prejudicial error was committed it is not preserved by the record.
The judgment is affirmed.
MR. CHIEF JUSTICE ADAMS and MR. JUSTICE BOUCK concur.
On Petition for Rehearing.
February 19, 1934, rehearing denied en banc. Mr. Justice Bouck withdraws his concurrence and now dissents. Mr. Justice Butler, Mr. Justice Bouck and Mr. Justice Holland think the rehearing should be granted.
On Application for Reconsideration and Further Rehearing.
March 19, 1934, case transferred to the court en banc, there considered and judgment affirmed. Former opinion adhered to.
MR. CHIEF JUSTICE ADAMS, MR. JUSTICE CAMPBELL, MR. JUSTICE BURKE and MR. JUSTICE HILLIARD concur. *Page 258 
MR. JUSTICE BUTLER, MR. JUSTICE BOUCK and MR. JUSTICE HOLLAND dissent.