No. 16,042.

BENHAM *v.* HEYDE.

(221 P. [2d] 1078)

Decided July 24, 1950. Rehearing denied September 11, 1950.

234

Mr. E. V. HOLLAND, for plaintiff in error.

Mr. JOHN E. FITZPATRICK, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE HILLIARD delivered the opinion of the court.

ACTION begun December 16, 1946, to recover commission for sale of real estate. There is involved the interpretation of an act of the general assembly, approved April 20, 1925, considered in the light of the fact that section four of the act was repealed in 1927, and sections one and two thereof were amended in 1929. Chapter 147, 1925 act, and chapter 149, 1927 and 1929 acts. The title of the act reads as follows:

"To define the terms 'real estate broker' and 'real estate salesman'; to regulate and license real estate brokers and real estate salesmen as herein defined; to create a real estate brokers board; to create a real estate license fund and to provide for the collection and disposition thereof; and providing penalties for violations hereof."

Defendant in error (plaintiff below), while frankly alleging that "he is not a licensed real estate broker and is not engaged in the selling of real estate," nevertheless sought and recovered judgment against plaintiff in error (defendant below) in the sum of two thousand two hundred twenty-five dollars, as and for commission allegedly earned by him pursuant to verbal agreement made December 8, 1945, in the matter of the sale of "certain farm lands owned by" defendant in Adams

county. Whether there was such an agreement—denied by defendant, and resolved affirmatively below—is not of importance except that by such resolution, which we are not persuaded to disturb, the competency of plaintiff to maintain the action, challenged below and here, became, and continues to be, *the* question. The challenge in the regard mentioned, timely and adequately interposed below, was and is predicated on the provisions of article 4, subdivision 2, and particularly sections 28 and 29, chapter 15, '35 Colorado Statutes Annotated (Laws of the several sessions cited above), effective as to all dates important to this inquiry.

The genesis of the law of defendant's reliance, was chapter 147, legislative session of 1925. We quote from sections one, two, four and twenty-one of the act, some words of which for emphasis and convenient reference we italicize. "Section 1. It shall be unlawful for *any person,* firm, partnership, association or corporation from and after January first, nineteen hundred and twenty-six, to engage in the business *or capacity* of real estate broker or real estate salesman in this state without first obtaining a license from the Secretary of State. * * * Section 2. A real estate broker within the meaning of this Act is *any person,* firm, partnership, association or corporation, who for compensation or valuable consideration sells or offers for sale, buys or offers to buy, * * * any real estate or improvements thereon for *others as a whole or partial vocation.* * * * Section 4. Two acts for a compensation or valuable consideration of buying or selling real estate of or for another, within any calendar year or offering for another to buy or sell or exchange real estate * * *, shall constitute the person, * * * a real estate broker * * * within the meaning of this act. * * * Section 21. *Any person,* firm, partnership, association or corporation violating the provisions of this act by acting as real estate broker or real estate salesman in this state after January 1, 1926, without having obtained a license as herein provided, or by

acting as real estate broker or real estate salesman after his license has been revoked or during any period for which his license may have been suspended under the provisions of this act, shall upon conviction thereof, if a person, be punished by a fine of not less than one hundred dollars ($100.00) nor more than five hundred dollars ($500.00), or by imprisonment for a term not to exceed six months, or by both such fine and imprisonment in the discretion of the court; and if a corporation, shall be punished by a fine of not to exceed five thousand dollars ($5000.00)" (C.S.A., c. 15, §46).

In 1927, section four of the act was formally repealed in its entirety. S.L. '27, p. 582, §1. In 1929, the general assembly amended sections one and two of the 1925 act, section one in details unimportant here, and section two in two major particulars, first, by eliminating certain words of the original act, that is to say, "as a whole or partial vocation," thereby making the inhibitions thereof applicable to *all* persons of whatever calling or none. Second, by substituting for the word "others," in behalf of whom the service in contemplation was forbidden, which, perhaps, in its plural form might be construed as not applicable to a single transaction, as here, the words "another or others," and thus the legislature singularized the proscription in its application. S.L. '29, c. 149, §§1 and 2 ('35 C.S.A., c. 15, §§ 28 and 29).

It is not contended that plaintiff was engaged in the "business of real estate broker," proscribed in section one of the act, which is emphasized in his complaint and testimony, but that he was acting in that "capacity" in the transaction upon which he bases his claim, not less plainly inhibited, unmistakably appears. He testified that defendant was to pay him a "commission" which, as he further testified, was to be "five per cent." The purchaser of the land involved, a witness for plaintiff, testified that plaintiff "was acting in the capacity of a real estate broker in the transaction." Plaintiff's wife, who said she was present when her husband and de-

fendant discussed the matter of commission, testified that plaintiff said to defendant, "Why don't you let other men handle the property? She said I will pay you a commission the same as I would them. So it was understood from the beginning," the witness continued, "that she was to pay a commission."

After considerable discussion as to whether plaintiff's claim was on contract or quantum meruit, in which both counsel and the court participated, the court required that plaintiff elect in relation thereto, which was done by amendment to the complaint in the following language, that is to say: "Defendant then requested the plaintiff to obtain for her a purchaser, and that in event he did so she would compensate him five per cent for his services upon the $45,000." Based thereon, which, as we are constrained to think, conformed to what already had been made to appear, the court and counsel proceeded on the theory that plaintiff, not licensed thereunto, and not engaged in the "business of real estate broker," who, nevertheless, was acting in the *capacity* thereof and thereby, as claimed by him, became the agent of defendant, as and for the consideration of a regular real-estate commission of five per cent, precisely as he would have claimed had he been a licensed broker. It would be difficult, we surmise, for one confessedly not licensed, to have fashioned his actions and claims more nearly in pattern of brokers licensed pursuant to the statute, than was made manifest by plaintiff's own showing here.

Shortly after plaintiff's election to rely upon a commission agreement, as already stated, and when he had concluded the presentation of his case, defendant moved dismissal of the complaint, on the ground, that, since plaintiff is not a licensed real-estate broker, formally pleaded by him, nevertheless, in the matter of the claimed services he was "acting in the capacity of a real estate broker," clearly, as said, inhibited by the statute. The court, although evidently proceeding with misgiv-

ings, denied the motion, but paused to observe: "The pleadings in this case admit that no license had been issued to the plaintiff as required by the Act of 1929, and to the Court the evidence is conclusive that the plaintiff acted in the capacity of a real estate broker and brought the seller and the purchaser together, and that subsequent negotiations resulted in an actual sale and purchase for the consideration of $45,000. It is clear," continued the court, "that the acts of the plaintiff come within the provisions of the act of 1929, which forbids such acts by the plaintiff." The trial judge's further remarks had to do with *Schwartz v. Weiner*, 94 Colo. 251, 30 P. (2d) 1110, which as he observed, was "decided in 1934, and some five years subsequent to the 1929 session laws, though it did not mention or pay any attention to the 1929 Act, which clearly prohibits, quoting from the opinion, 'any person to engage in the business or capacity of real estate broker in this state without first having obtained a license from the secretary of state.' " Notwithstanding the foregoing, clearly indicating that the judge was convinced the inhibitions of the act of 1925, as changed by the repeal of section four in 1927, and as amended in 1929, worked plaintiff's undoing, still, and solely because of the Schwartz-Weiner case, which presently will have our attention, the judge felt that he "must deny the motion to dismiss."

Whatever elasticity may have attended the original or 1925 act, by the repeal of section four thereof in 1927, and the amendments of sections one and two in 1929, already stated and analyzed, at the time of the several occurrences involved in the present inquiry, as seems clear, the applicable statutory law was to the effect that "any person," who, "without having obtained a license as" in the act "provided," consummates a sale of real estate for "another" (the precise status of plaintiff) becomes a "real estate broker," and amenable to the penalties involved. Hence, also, to the rule of law controlling in such situation, which, as we are persuaded,

precludes plaintiff in his quest for recovery. To hold otherwise, as we are further persuaded, would be to ignore one of our own well-stated pronouncements, that is to say: "A fundamental rule of construction requires us to attribute to this change of language some change of meaning." *Samples v. Board of County Com'rs,* 87 Colo. 227, 286 Pac. 273.

 That constitutionality and legality attend legislation of the nature here involved, is well established. *Roman v. Lobe,* 243 N. Y. 51, 152 N.E. 461, 50 A.L.R. 1329. There, a real-estate broker, having effected a sale of real estate, sued the seller for a commission, who, admitting the employment and service, defended upon the ground that the "broker was not licensed in accordance with the statute." In behalf of the broker it was contended that the legislative enactment requiring that he should be licensed in the premises, was an "invalid exercise of police power in that it violates Federal and State Constitutions." The New York Court of Appeals justified the challenged act as being within the wide discretion of the legislative branch of the government, and supported as well by "the argument of history." To the argument that some callings "are so inveterate and basic, so elementary and innocent, that they must be left open to all alike, whether virtuous or vicious," the court there said: "If this be assumed, that of broker is not one of them. The intrinsic nature of the business combines with practice and tradition to attest the need of regulation. The real estate broker is brought by his calling into a relation of trust and confidence." The court there, denying recovery, emphasized that the "Legislature acts within its lawful powers when it establishes a system of licenses for real estate brokers. * * * The plaintiff is not aggrieved unless the exaction of a license is to be disregarded altogether."

 "Where a statute requires a broker to obtain a license before sales of the kind in question can be negotiated by him, there is no doubt that if such a sale

is made by one acting as a broker without the required license, he can recover no compensation for his services." 6 Williston on Contracts (Rev. ed.), §1765. "A contract, entered into by a person in the course of an occupation in which he is engaged without taking out a license * * * as required by law, is void and unenforceable where the statute or ordinance expressly vitiates such contracts, or where it expressly prohibits the carrying out of such occupation or business without a license, * * * even though it does not expressly declare such contracts to be void." 53 C.J.S., 711, §59. "It is well settled that where a licensing statute or ordinance is enacted for the protection of the public, and expressly prohibits under penalty [as here], and there is nothing in the language which indicates an intent to limit its scope to the exaction of a penalty, or to grant that a contract may be lawful, and there is nothing in the subject matter to justify a presumed intent on the part of the lawmakers to relieve the wrongdoer from the ordinary consequences of a forbidden act, a contract made without having procured the required license creates no right of action which a court of justice will enforce. Moreover, it has been held in a number of jurisdictions that where a statute or ordinance declares that it shall be unlawful to perform certain acts thereby prohibited without a license, and imposes a penalty for violation, contracts for the performance of such acts are necessarily void and incapable of enforcement, and this without reference to whether the object of the act is to protect the public or merely to raise revenue." 33 Am. Jur., p. 386, §70. "The statutory requirement to obtain a license before engaging in the trade is a police regulation for the protection of the public, *Smith v. American Packing & Provision Co.*, 102 Utah 351, 130 P. (2d) 951; a penalty is provided for the violation of the statutory exaction; and it is the well settled general rule that in ordinary circumstances, a contract entered into by an unlicensed person in contravention of the statutory

provisions of this kind will not be enforced." *Dow v. United States,* 154 F. (2d) 707. "Where a statute imposes a penalty on the doing of an act without either prohibiting it or expressly declaring it illegal or void, the generally announced rule is that an agreement founded on or for the doing of such penalized act is void." 17 C.J.S., p. 557, §202. "It is the general rule of law that where a statute expressly forbids a person from entering into a certain kind of contract until he performs some precedent act, and imposes a penalty upon such person for attempting to enter into the forbidden contract, the contract itself is absolutely void *ab initio* and the party penalized has no rights thereunder, and the other party to the contract, who was not required to perform any precedent act and who is not penalized by the statute, is not *in pari delicto* and may repudiate the agreement and stand on his rights as if no contract had ever been made." *Hunt v. Douglas Lumber Co.,* 41 Ariz. 276, 17 P. (2d) 815. "Where a statute designed for the protection of the public prescribes a penalty, that penalty is equivalent to an express prohibition, and a contract in violation of its terms is void." *McManus v. Fulton,* 85 Mont. 170, 278 Pac. 126. See, 17 C.J.S., p. 558, §203. "If the particular statute," says the Supreme Court of New Mexico, "declares that the calling of a broker 'shall not be lawful,' or 'shall not be pursued or done' without a license, and perhaps by the weight of authority, if it imposes a penalty for the breach thereof, thus implying a prohibition [both elements present here], the broker cannot recover for his services rendered while he was unlicensed. The reason is obvious. Valid contracts may not arise out of transactions forbidden by law. The illegality inhering at the inception of such contracts taints them throughout and effectually bars enforcement.

"It is also well settled that, if the statute in question takes on the nature of a police regulation, is designed for the protection of the public by sifting the personnel of

those permitted to engage in the particular occupation, and contains nothing to indicate that the penalty imposed for its violation is exclusive, the usual penalty for engaging in a forbidden transaction will be added, and recovery will be denied. Generally, however, the first test applied by the courts in arriving at legislative intent is an ascertainment of whether the Legislature was enacting a revenue measure or a police regulation. And the determination of this matter ordinarily controls the question of the validity and enforcement of a contract executed in disregard of the statute. If simply a revenue measure, a contract so executed will be enforced. If a police regulation [as here], enforcement will be denied." *Garvin v. Gordon,* 36 N.M. 304, 14 P. (2d) 264.

In a Georgia case, where the statute provided that "a real estate broker means any person, firm or corporation, who, for *another* and for a fee, commission, or other valuable consideration, sells, exchanges, buys, * * * any estate or interest in real estate [language like unto the Colorado statute, as amended in 1929]," the court said the statute "has reference to and applies to a person who in a single transaction [as here] acts as agent of another, * * * without having obtained the license required by the act, he can not recover any commission or other thing of value for his services rendered." *Hazlehurst v. Southern Fruit Distributors,* 46 Ga. App. 455, 167 S.E. 898. Certiorari to the Supreme Court of Georgia was denied.

We come now to the consideration of *Schwartz v. Weiner, supra,* referred to in the remarks of the trial judge, and which is the reliance of plaintiff in error. Counsel for plaintiff, although conceding that the opinion in the Schwartz case made no reference to the 1929 amendment, already stated and analyzed, claims, nevertheless, that since the opinion there was announced in 1934, perforce, the court must have made determination in the light of said 1929 act. Counsel for defendant, however, emphasizing not only the dearth of reference by

the court to the 1929 act, but the additional fact that counsel there, both sides, neither in their pleadings nor in their presentation at nisi or here, mentioned or referred to the 1929 act, and confining themselves to the discussion of the law as originally enacted in 1925 and as amended in 1927, the 1929 act, invoked for the first time in the present inquiry should be applied and employed sans consideration of the Schwartz case.

While the arguments advanced are most engaging, we do not find it necessary to determine that which divides counsel. The facts in the two cases differ in a major and controlling particular, that is to say: In the case here neither party is a licensed real-estate broker, hence, the general rule, which we have set forth at much length and supported by an array of authorities, precludes recovery. But in the Schwartz case, defendant was a licensed real-estate broker, and employed plaintiff there, not so licensed. In that situation the exception emphasized by the authorities justified judgment of recovery by the nonlicensed employee from the licensed employer. In the case of *Dow v. United States,* 154 F. (2d) 707, cited and quoted above as to the general rule, there is a good statement of the exception: "But that general rule," the court added, "does not have application in a case of this kind in which an unlicensed member of a profession or trade seeks to recover from a licensed member for services rendered or labor performed pursuant to a contract entered into by them." On the theory of the exception to the general rule, as well recognized as the rule itself, the opinion in the Schwartz case was sound. But the facts here come squarely within the general rule, and recovery may not be justified.

Let the judgment be reversed, and on receipt of our remittitur the trial court will enter an order of dismissal of the action.

Mr. Justice Jackson and Mr. Justice Hays dissent.

Mr. Justice Holland does not participate.