**MANUFACTURER'S NATIONAL BANK OF DETROIT, Executor of the Estate of George T. Christensen, Appellant,**

v.

**Joel T. HARTMEISTER, Appellee.**

No. 9894.

United States Court of Appeals
Tenth Circuit.

April 21, 1969.

John A. F. Wendt, Aspen, Colo., for appellant.

John M. Law and Ralph M. Clark, of Law, Nagel & Clark, Denver, Colo., for appellee.

Before WARREN L. JONES,* Senior Circuit Judge, and BREITENSTEIN and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This diversity suit was brought by appellee Hartmeister to recover an unpaid balance on commissions for three real estate sales and salary, all allegedly owed by appellant's decedent Christensen [1] under an oral agreement. Christen-

---

* Of the Fifth Circuit, sitting by designation.

1. This Court has granted leave for the present appellant as executor to be sub-stituted for Mr. Christensen. In this opinion reference will be made to the appellant throughout as Christensen.

sen denied liability and counterclaimed to recoup two $1,000 payments on the commissions to Hartmeister on the ground that the agreement providing for the commissions was unlawful, Hartmeister not being a licensed real estate broker. Following a non-jury trial the District Court found that an oral agreement was made which lawfully entitled Hartmeister to two of the three commissions claimed, but denied Hartmeister's other claims and rejected Christensen's counterclaim. Christensen appealed.

The following facts were shown without any material dispute. The agreement involved the management by Hartmeister of several properties in and around Aspen, Colorado. Those lying outside of Aspen included the Marolt property consisting of approximately 30 acres of unimproved land; a 15-acre tract known as the Old Rodeo Grounds, where a corral and pens were constructed; and two properties consisting of about 2,200 acres known as the Burlingame-Mechem Ranches. The Marolt and Rodeo properties were held by corporations owned by Christensen, but Hartmeister testified that Christensen said he owned them himself. The arrangement also covered several business and rental properties in Aspen which Hartmeister said he believed to be Christensen's.

Hartmeister's job included looking after all the properties to see that they were presentable for sale, arranging for repairs, taking care of lawn mowing, and contacting tenants when rent was not properly paid. Hartmeister began working on March 1, 1964. He received salary checks from then through August, 1965, when the checks stopped coming. 25% of his compensation was paid by Christensen, and the remaining 75% by the two corporations which owned the Marolt and Rodeo properties.[2] During Hartmeister's employment all three of the properties out of Aspen were sold and this dispute arose over commissions and unpaid salary.

The District Court found that there was an oral agreement for Hartmeister to manage the rental properties in Aspen and the three tracts out of Aspen, and that Christensen agreed to pay Hartmeister a salary of $100 a month and 5% of the total sales price of the three properties located out of Aspen, if they were sold during his employment, with the condition that Hartmeister would receive the 5% only if Christensen was not required to employ and pay a real estate broker. It was found that the Rodeo property was sold according to the deed in July 1965, for $75,000; that the Marolt property was sold according to the deed in August, 1965, for approximately $150,000; and that both of these sales were made by Hartmeister without a broker being involved. Christensen made two $1,000 commission payments to Hartmeister on these sales. The Burlingame-Mechem property was found to have been sold through the efforts of a broker who received a commission so that no commission was due to Hartmeister on it.

On the defense of illegality of the agreement the District Court found that Hartmeister was not a licensed real estate broker. However, it was found that he acted only as an agent for Christensen and only with reference to property owned by Christensen or by corporations wholly owned by him. The Court held that such activities as an employee were not subject to the real estate broker licensing requirements of C.R.S.1963, 117-1-1 et seq. Concluding that the agreement lawfully entitled Hartmeister to the 5% commissions on the Marolt and Rodeo property sales, the court entered judgment for $9,939.06, the balance due on these commissions, with interest.

Christensen's principal issue is that the agreement was void since

2. Hartmeister testified that Christensen explained that this method of payment was for accounting reasons.

Hartmeister was not a licensed real estate broker. Where services are performed by an unlicensed person in violation of the Colorado licensing statutes, the agreement for the services is illegal and unenforceable. Benham v. Heyde, 122 Colo. 233, 221 P.2d 1078 (1950). Christensen relies first on the Colorado licensing laws as amended on April 16, 1965, and a redefinition of brokers.[3] We conclude that the amendment did not apply.[4] The agreement between Hartmeister and Christensen was made in February or March, 1964, and services under it began in March, 1964. The sales agreements on the Rodeo and Marolt properties were made on March 3 and April 1, 1965, respectively—prior to the 1965 amendment becoming effective. Although the deeds were executed and most payments were made after the effective date of the amendment, Hartmeister's services entitling him to the payments were performed before the amendment was effective, so that it did not apply. See Ducey v. Patterson, 37 Colo. 216, 86 P. 109, 9 L.R.A.,N.S., 1066 (1906); Harp v. Gourley, 68 N.M.162, 359 P.2d 942 (1961); Marks v. Lebkeucher, 224 App.Div. 16, 229 N.Y.S. 83 (1928).

■■■ We agree with the District Court that the licensing law does not bar recovery. The commissions in dispute relate to the Marolt and Rodeo properties. Although Christensen stated that he was the owner, the properties were held by corporations which were wholly owned by him and which paid 75% of Hartmeister's salary. The District Court found that Hartmeister was acting as an agent for Christensen and with reference only to property owned by him or these undisclosed corporate principals. In such circumstances he was merely an employee engaged in the business of the principals and not a broker within the meaning of the licensing statute.[5] Black Forest Realty & Investment Co. v. Clarke, 86 Colo. 454, 282 P. 878 (1929). In any event, we accept the application of Colorado law by the District Court, whose view on State law will not be disturbed unless clearly erroneous. Douglas-Guardian Warehouse Corporation v. Jones, 405 F.2d 427 (10th Cir. 1969).[6]

■■■ It is contended that there was a lack of indispensable parties since the corporations owning the properties were not joined. However, Hartmeister's recovery was sought from Christensen alone on the basis that Christensen made the agreement and is personally liable although he acted for himself and as agent for undisclosed principals. The District Court found that at all times Christensen was acting for himself and as agent for undisclosed corporate principals. This finding is challenged, but it is not clearly erroneous and is binding on appeal. Rule 52(a), F.R.Civ.P.; United States Fidelity & Guaranty Co. v. State of Oklahoma, 383 F.2d 417

3. See C.R.S.1965 Perm.Cum.Supp. 117–1–2.

4. In its Findings and Judgment the District Court stated: "That this agreement was not unenforceable by virtue of the real estate licensing laws of the State of Colorado relating to real estate agents and brokers, C.R.S. '63, 117–1–1 et seq." The Court cited Black Forest Realty & Investment Co. v. Clarke, 86 Colo. 454, 282 P. 878 (1929).

5. C.R.S.1963, 117–1–1 provided that it " * * * shall be unlawful for any person, firm, partnership, association or corporation to engage in the business or capacity of real estate broker or real estate salesman in this state without first hav-

ing obtained a license * * *" Section 117–1–2 provided that the article " * * * shall not apply to any person, firm, partnership, association or corporation who as owner or lessor shall perform any of the acts aforesaid with reference to property owned by them * * *."

6. This conclusion against Christensen's defense under the licensing law also disposes of his related contention that the agreement was severable with the part relating to the commissions being unenforceable, and his counterclaim seeking to recoup the $2,000 in payments on the commissions as allegedly made under an unlawful agreement.

(10th Cir. 1967). It is clear that the District Court gave judgment against Christensen due to his liability on the agreement made while acting for himself and as agent for undisclosed principals. See Haviland v. Mayfield, 38 Colo. 185, 88 P. 148 (1906); Mackey v. Briggs, 16 Colo. 143, 26 P. 131 (1891); and Cleary Brothers v. Christie Scow Corporation, 215 F.2d 740, 743–744 (2d Cir.1954). No relief affecting the corporations was sought or granted. Thus, there was no lack of an indispensable party. Poole v. Camden, 79 W.Va. 310, 92 S.E. 454, 455, L.R.A.1917E, 988, (1917).

It is argued that the corporate veil of the two corporations owning the properties was improperly pierced by imposing personal liability on Christensen. For the reason outlined above the assertion is inapposite. The basis of the judgment was Christensen's personal liability on the agreement he made while acting for himself and as an agent for undisclosed principals. The liability was not imposed on him on the theory that the circumstances justified ignoring the corporate form. Thus, reliance on the proposition is misplaced.

It is argued that there was a lack or failure of consideration to support recovery of the Marolt and Rodeo property commissions, since Hartmeister did not produce the buyers. However, it was found that there was a single agreement under which Hartmeister performed substantial services and was entitled to the commissions unless Christensen had to employ and pay a broker for a sale on these properties. No broker was employed. There was clearly adequate consideration and such a single consideration may support as many promises as were bargained for and given in exchange. Greenshields v. Warren Petroleum Corp., 248 F.2d 61 (10th Cir. 1957), cert. denied 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957).

The award of interest on the commissions from the dates of the deeds conveying the Rodeo and Marolt proper-

ties is challenged. The determination that the commissions were due at such times was clearly reasonable, and the judgment properly awarded such interest. C.R.S.1963, 73–1–2; Donley v. Bailey, 48 Colo. 373, 110 P. 65 (1910).

The propositions discussed, and remaining ones which are related and require no further analysis, show no ground for disturbing the judgment.

Affirmed.