582 P.2d 1059 (1978)
WALKER ADJUSTMENT BUREAU, Assignee, Plaintiff-Appellant,
v.
WOOD BROS. HOMES, INC., a corporation, Defendant-Appellee.
No. 76-870.
Colorado Court of Appeals, Division I.
May 4, 1978.
Rehearing Denied June 1, 1978.
Certiorari Granted August 8, 1978.
*1060 Louis A. Weltzer, David L. Worstell, Nederland, for plaintiff-appellant.
George Alan Holley & Associates, Sharon S. Metcalf, Scott D. Albertson, Golden, for defendant-appellee.
*1061 BERMAN, Judge.
Plaintiff, Walker Adjustment Bureau, brought this action against defendant, Wood Bros. Homes, Inc., seeking to recover the contract price or, alternatively, the reasonable value of services performed by plaintiff's assignor, Fred J. Gagnon, in accordance with a contract for carpentry work on certain properties of defendant in New Mexico. Ruling that the law of New Mexico governed and operated to bar the action, the trial court granted defendant's motion for summary judgment.
Asserting that the law of Colorado governs this case under applicable choice of law principles, and that Colorado law entitles it to relief, plaintiff appeals. We agree and reverse.
Viewed in the light least favorable to the moving party, see Abrahamsen v. Mountain States Telephone & Telegraph Co., 177 Colo. 422, 494 P.2d 1287 (1972), the record reflects the following facts, which are undisputed for purposes of this appeal.
On August 22, 1972, defendant, a Delaware corporation with its principal place of business in Jefferson County, Colorado, entered into a contract which is the subject of this dispute with Gagnon, then a California resident and licensed general contractor. In that contract, Gagnon, in return for the contract price, agreed to furnish all labor required to complete the rough carpentry work on an apartment complex being constructed by defendant in Albuquerque, New Mexico.
Gagnon was originally contacted concerning the job in Los Angeles, California. Subsequently, he flew to Albuquerque to inspect the project site. Additional negotiations conducted between Gagnon and the defendant took place in Colorado. And, the final act of signing the contract was also performed in Colorado at the defendant's office in Lakewood.
Although Gagnon did not, at any time, possess a New Mexico contractor's license, he was apprised by the defendant's Multi Family Division Manager and its Albuquerque Project Manager that he could, as subcontractor, operate under the supervision of defendant, a licensed general contractor, without a separate license. Accordingly, Gagnon's employees commenced performance of the contracted work. Sometime in early September, however, defendant terminated Gagnon's participation in the project and refused to allow his men to complete the carpentry. No payment was made by defendant to Gagnon and consequently Gagnon's assignee instituted this action.
In response to the plaintiff's complaint, defendant denied owing any sum to Gagnon and sought a setoff of monies paid to Gagnon's employees. In its amended answer, defendant further urged as an affirmative defense, N.M.Stat.Ann. §§ 67-35-15 and 67-35-33. Section 67-35-15 provides:
"No person shall engage in the business of contractor within the state without a license issued by the commission classified to cover the type of work to be undertaken."
Section 67-35-33 provides:
"No contractor shall act as agent or bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by the Construction Industries Licensing Act without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose."
Invoking the "most significant relationship" test of the Restatement (Second) of Conflicts, the trial court concluded that New Mexico law governed the case, that the above statutes precluded quantum meruit recovery as well as an action on the contract, and that defendant was not estopped from raising the statutes as a bar to plaintiff's suit. Accordingly, the court granted defendant's motion for summary judgment.

I.
As the Colorado Supreme Court has recently determined with respect to tort cases, see Dwork v. Olson Construction Co., Colo., 551 P.2d 198 (1976) (rejecting application *1062 of lex loci contractus to covenants not to sue, stressing tort aspects of such covenants); and First National Bank v. Rostek, 182 Colo. 437, 514 P.2d 314 (1973) (abandoning in guest statute context, rigid application of lex loci delicti), mechanical deference to traditional rules governing choice of law in contract cases may no longer be appropriate in view of modern multistate commercialism. We need not resolve that issue, however, since both those rules and the contemporary approach relied on by the trial court mandate application of the law of Colorado to this case.

Traditional Choice of Law Rules
At the outset, we reject defendant's characterization of the applicability of its affirmative defense as an issue merely having to do with matters of performance, and thus governed by the lex loci solutiones, the law of the place of performance. Rather, we view the statutory provisions relied on by the defendant as "render[ing] such contracts unlawful or unenforceable . . . and bar[ring] the right of recovery." Kaiser v. Thomson, 55 N.M. 270, 232 P.2d 142 (1951). Thus, since the asserted affirmative defense concerns the validity and effect of the parties' contract and the remedies upon breach, the lex loci contractus, the law of the place where the contract was made, and the lex fori, the law of the forum, are the determinative traditional choice of law rules here. Western Enterprises, Inc. v. Robo-Sales, Inc., 28 Colo.App. 157, 470 P.2d 931 (1970); Des Moines Life Ass'n v. Owen, 10 Colo.App. 131, 50 P. 210 (1897). Accordingly, since the contract was executed in this state, Cf. Denver Truck Exchange v. Perryman, 134 Colo. 586, 307 P.2d 805 (1957), which is also the forum, these rules require that Colorado law govern plaintiff's causes of action.

The Most Significant Relationship Approach
The trial court applied the approach of the Restatement (Second) of Conflicts. That approach generally determines the rights and duties of the parties with respect to an issue in contract by invoking the local law of the state having "the most significant relationship" to the transaction. In the absence of an effective choice of law by the parties, the Restatement approach requires that the following contacts be taken into account in determining the applicable law: The place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation, and place of business of the parties. Restatement (Second) of Conflict of Laws § 188(1) and (2) (1971). This approach also includes elements of the so-called "rule of validation," see generally Ehrenzweig, Contracts in the Conflict of Laws, 59 Colum.L. Rev. 973 (1959), which seeks to find, and assumes the parties intended, that the subject contract is governed by local law which validates and enforces it. See Restatement, supra, § 188 Comment b.
With respect to an issue of contract illegality, the Restatement distinguishes between the existence and effect of any illegality. While the local law of the state where performance has taken place determines the illegality vel non of performance under a contract, the local law of the state having the most significant relationship, as determined under the principles set forth above, governs the effect of such illegality on the rights of the parties. Restatement, supra, § 202(1) Comment c.
New Mexico law establishes the illegality of plaintiff's assignor's performance here. See Kaiser v. Thompson, supra. Nevertheless, the forum, Colorado, is the place of the parties' contracting, a place of negotiations, and defendant's principal place of business. Moreover, protection of the justified expectations of the parties which include "at the very least . . . that the provisions of the contract will be binding upon them," Restatement, supra, § 188 Comment c, also militates strongly against applying New Mexico law. Accordingly, we conclude that if the conflicts approach adopted by the trial court is employed, Colorado law has the more significant *1063 contacts with the parties and transaction in issue here, and thus governs the effect of the illegality on the parties' rights.

II.
Colorado does not require state licensing of construction contractors. Thus, if traditional choice of law principles are applied, the parties' performed contract poses no illegality or bar to enforcement under Colorado law.
And, even if, pursuant to the modern approach of the Restatement, Gagnon's failure to obtain licensing is recognized as rendering its performance illegal under the law of New Mexico, Colorado law permits enforcement of the contract in the circumstances here. Colorado, as New Mexico, recognizes the general rule that when a statute requires for the protection of the public a license to practice a particular profession or trade, a contract for such services entered into with one not licensed is unenforceable. Benham v. Heyde, 122 Colo. 233, 221 P.2d 1078 (1950); Reed v. Bailey, 34 Colo.App. 20, 524 P.2d 80 (1974). Nonetheless, "`that general rule does not have application in a case of this kind in which an unlicensed member of a profession or trade seeks to recover from a licensed member for services rendered or labor performed pursuant to a contract entered into by them.'" Benham v. Heyde, supra, quoting Dow v. United States, 154 F.2d 707 (10th Cir. 1946). As the Kentucky Court of Appeals has explained, there are sound reasons for such an exception. Such licensing statutes
"are designed to protect the public from being imposed upon by persons not qualified to render a professional service. The reason for the rule denying enforceability does not exist when persons engaged in the same business or profession are dealing at arms length with each other.

. . . . .
"[T]he technical requirements of the licensing statute play no part in the determination of just claims between persons in the same business field who have contracted with knowledge of each other's respective professional qualifications." Kennoy v. Graves, 300 S.W.2d 568 (Ky. 1957).
See also John E. Rosasco Creameries, Inc. v. Cohen, 276 N.Y. 274, 11 N.E.2d 908 (1937).
In the instant case, defendant was in a position to know the qualifications of Gagnon. And, since defendant's agents told Gagnon that his subcontract work could be performed under defendant's general contractor's license, no reliance was placed on the existence of a license. In such circumstances, the New Mexico statutes in question provide in this forum no valid defense to plaintiff's claims for compensation. To hold otherwise would be to allow defendant to induce Gagnon's reliance, accept the fruits of his labors, and then invoke the subject statutes as a bar to recovery, a result the conscience of this court will not sanction. See generally Altergott v. Yeager, Colo.App., 543 P.2d 1293 (1975).
The judgment is reversed and the cause remanded with directions to reinstate the complaint and for further proceedings consistent with the views expressed herein.
COYTE, J., concurs.
KELLY, J., dissents.
KELLY, Judge, dissenting:
I respectfully dissent. I cannot join the majority in lending the imprimatur of this Court to a contract which was patently illegal in New Mexico, where it was to be performed. Kaiser v. Thomson, 55 N.M. 270, 232 P.2d 142 (1951); N.M.Stat.Ann. § 67-35-33. Not only does the majority sanction Gagnon's illegal contract, but implicitly approves conduct on his part which New Mexico statutes define as criminal. See N.M.Stat.Ann. § 67-35-59.
Colorado has, in multistate tort cases, adopted the rule of the Restatement (Second) Conflict of Laws that the law of the state with the most significant relationship to the occurrence and the parties should be applied. See First National Bank v. Rostek, 182 Colo. 437, 514 P.2d 314 (1973); Sabell v. Pacific Intermountain Express *1064 Co., 36 Colo.App. 60, 536 P.2d 1160 (1975). Moreover, in my view, Dworak v. Olson Construction Co. Colo., 551 P.2d 198 (1976), is sufficient authority for the application in contract cases of the rule stated in Restatement (Second) Conflict of Laws § 188, making the use of so-called traditional choice of law rules unnecessary. I would, therefore, apply only the most significant relationship concept to the determination of this controversy.
In accordance with § 188(2) of the Restatement, the contacts to be considered in this case are: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. These contacts are to be weighed in accordance with the principles stated in § 6 of the Restatement, the most important of which, for the purposes of this case, are: (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, and (d) the protection of justified expectations of the parties.
In my view, consideration of these principles mandates the application of New Mexico law. The subject matter of this contract was located in New Mexico, where the contract was to be performed, and where most of the negotiations prior to its execution occurred. I regard it as a fact of some importance that Gagnon's work on the project commenced even before the execution of the contract in Colorado. Although the defendant's principal place of business is Colorado, the record reveals that the construction firm also does business in a number of other states, and I therefore do not consider this factor as deserving particular weight, especially since Gagnon and the bulk of his employees were from California.
The majority, in applying the principles of § 6 of the Restatement, regards the expectations of the parties that they were entering into a binding contract as having paramount importance over the policy of New Mexico to prohibit building construction within its borders by unlicensed contractors. I disagree, for I do not regard the expectations of these parties as having been justified expectations. The record reveals to me that both parties to this transaction were so motivated by the desire for profit as to be entirely heedless of any New Mexico law applicable to their transaction. Under these circumstances, I fail to see any relevant policy of Colorado favoring the enforcement of this contract which New Mexico prohibits.
On the contrary, Colorado cases espouse a contrary view. For example, in Baker v. Couch, 74 Colo. 380, 221 P. 1089 (1924), the court said that:
"Where the contract or transaction in question is illegal, fraudulent or immoral, and there is mutual misconduct of the parties with respect thereto, neither law nor equity will aid either to enforce, revoke, or rescind. To such disputes the courts will not listen, and the parties thereto they will leave in the exact position in which they have placed themselves." See also Potter v. Swinehart, 117 Colo. 23, 184 P.2d 149 (1947).
New Mexico has declared that the purpose of its statute is to protect its residents from substandard or hazardous construction and against fiscally irresponsible contractors. See Olivas v. Sibco, Inc., 87 N.M. 488, 535 P.2d 1339 (1975). I perceive no factor in this case which outweighs the declared policy of a sister state. I would deny enforcement of this illegal contract. See Restatement (Second) Conflict of Laws §§ 196 and 202(2).