Dwight J. HOLTER and Sandra A. Holter, Plaintiffs-Appellants and Cross-Appellees,

v.

MOORE AND COMPANY, William M. Moore, Robert S. Wolff, and Timothy M. Miller, Defendants-Appellees and Cross-Appellants.

Nos. 82CA1144, 83CA0157.

Colorado Court of Appeals,
Div. III.

Dec. 8, 1983.

Rehearing Denied Jan. 12, 1984.

Certiorari Denied May 21, 1984.

Burns & Figa, P.C., Hugh A. Burns, Phillip S. Figa, Denver, for plaintiffs-appellants and cross-appellees.

Rothergerber, Appel & Powers, James R. Everson, Frederick J. Baumann, Denver, for defendants-appellees and cross-appellants.

TURSI, Judge.

The plaintiffs, Dwight J. Holter and Sandra A. Holter (Holters), appeal the adverse decisions received in the trial court on their two claims for relief against defendants Moore and Company, a Colorado real estate firm; William M. Moore, president; and Robert S. Wolff and Timothy M. Miller, branch office real estate salesmen (Moore). There are two main issues to be resolved on appeal. The first is whether there is an implied private cause of action under § 12–61–103(2), C.R.S.1973 (1978 Repl.Vol. 5) and Colorado Real Estate Commission Rules C–4, C–5, C–6, and C–7. The second is whether a jury trial and exemplary damages are permissible in a breach of fiduciary duty action against a real estate broker. We answer the first issue posed in the negative, and the second in the affirmative.

In June 1978, the Holters entered into an exclusive sale contract with the Fort Collins branch office of Moore. The Holters' home was sold in August 1978. However, as a result of a dispute between the Holters and Moore over the value of the home, the $12,075 commission due Moore under the contract was paid "under protest."

During the time the Holters were under contract, Moore failed to retain a licensed real estate broker as manager of the Fort Collins branch office, and in addition failed to maintain a proper branch office license with the Colorado Real Estate Commission (Commission). *See* § 12–61–103(2) and Commission Rules C–4 through C–7. Upon learning of these violations, the Commission sanctioned Moore by way of admonishments.

The Holters' first claim is premised on the violations committed by Moore in regard to its Fort Collins branch office operations. The Holters contend that § 12–61–103(2) and Commission Rules C–4, C–5, C–6, and C–7 implicitly authorize a private cause of action for recovery of commissions paid to a non-complying real estate broker. Accordingly, pursuant to C.R.C.P. 23, the Holters moved that the trial court certify as a class all persons who had paid

a commission to Moore during the time the Fort Collins branch office was improperly maintained. The trial court denied the motion for class certification on the first claim on the ground that the Holters did not meet the burden of satisfying all mandatory requirements of C.R.C.P. 23.

Moore's first motion for summary judgment on the Holters' first claim was denied, but not on the merits. On their second motion, the trial court granted a summary judgment in favor of Moore as final judgment on the Holters' first claim. The trial court held that the Holters were without standing to pursue a private remedy based upon violations of § 12–61–103(2) and Commission Rules C–4 through C–7. The trial court concluded that since the Holters did not have standing to maintain a private cause of action, it had no subject matter jurisdiction over the first claim for relief. The Holters appeal these rulings. Moore appeals the denial of their first motion for summary judgment on the first claim.

Holters' second claim sought actual damages, as restitution, in the form of an accounting from Moore on a breach of fiduciary duty basis. The Holters seek to recover $22,075 from Moore. The amount consists of $12,075 commissions paid and $10,000 as the alleged deficiency in the sale price of their home. In addition, the Holters sought exemplary damages alleging that Moore acted with wanton and reckless disregard of their rights and feelings.

The trial court struck the Holters' demand for jury trial on the ground that an action for breach of fiduciary duty is equitable in nature and therefore is not appropriate for jury trial. Under this rationale, the trial court also granted partial summary judgment to Moore on the exemplary damages claim. The trial court denied the Holters' motion for a C.R.C.P. 54(b) determination to make its rulings appealable.

After a petition for a writ of mandamus to the Colorado Supreme Court was denied, the Holters chose to stand mute on their second claim and take an adverse judgment. This was done to expedite the entry of an appealable final judgment.

## I.

■ In regard to Moore's cross-appeal on the Holters' first claim, a denial of summary judgment may not be considered on appeal after final judgment. *Manuel v. Fort Collins Newspapers, Inc.*, 631 P.2d 1114 (Colo.1981). The first claim culminated in a summary judgment in favor of Moore as a final judgment. Therefore, Moore's cross-appeal is dismissed.

## II.

In holding that the Holters were without standing to maintain their first claim, the trial court relied on *National Wildlife Federation v. Cotter Corp.*, 646 P.2d 393 (Colo.App.1981). Our judgment in that case was reversed while this appeal was pending. *National Wildlife Federation v. Cotter Corp.*, 665 P.2d 598 (Colo.1983). However, those portions of our opinion in *National Wildlife Federation* which the trial court relied on were rejected not as repugnant to Colorado law, but rather as inapplicable to the issue posed. Our supreme court held that the action in *National Wildlife Federation* concerned judicial review of an administrative agency, and not the pursuit of a private remedy for violations of a statute. Thus, we do not construe that supreme court holding as dispositive here.

■ Colorado has accepted the guidelines set down by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) as useful for determining whether a statute impliedly authorizes a private cause of action. *Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission*, 620 P.2d 1051 (Colo. 1980). There are three factors which determine whether a private remedy is implicit in a statute which does not expressly authorize such a remedy. They are (1) whether the plaintiff is within the class for whose benefit the statute was enacted, (2) whether the legislature has explicitly or implicitly intended to create a private remedy, and (3)

whether an implied private remedy would be consistent with the purposes of the legislative scheme. *Cort v. Ash, supra.*

■ The focus of the inquiry is whether the legislature intended to create a private cause of action. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). If the statute expressly provides a remedy, courts must be chary of reading others into it. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). In the absence of strong indicia of legislative intent to the contrary, courts are compelled to conclude that the legislature provided precisely the remedies it considered appropriate. *Middlesex County Sewerage Authority v. Sea Clammers,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

■ Applying these principles here, we note that § 12–61–103(2) does not contain language indicating a legislative intent to authorize private remedies for its violation. The statutory scheme authorizes the Commission to enforce compliance with the provisions and to discipline non-compliance. Section 12–61–113, C.R.S.1973 (1978 Repl. Vol. 5). Where a statute creates legal duties and provides a particular means of enforcement, the designated remedy is exclusive and courts are without authority to impose others. *Silverstein v. Sisters of Charity,* 38 Colo.App. 286, 559 P.2d 716 (1976). We find no "loud and clear" expression of legislative intent authorizing a private remedy for violations of § 12–61–103(2) and Commission Rules C–4 through C–7. *See Quintano v. Industrial Commission,* 178 Colo. 131, 495 P.2d 1137 (1972). And, in light of the enforcement procedures provided in the statutory scheme, coupled with lack of legislative intent authorizing a private cause of action, we must refrain from inferring one. *See California v. Sierra Club,* 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981).

The Holters cite *Benham v. Heyde,* 122 Colo. 233, 221 P.2d 1078 (1950) for the proposition that it is consistent with the legislative scheme to imply a private cause of action for the recovery of commissions paid to an unlicensed real estate branch office. *Benham* stands for the proposition that contracts executed with unlicensed real estate agents are void. The Holters ask that we extend Benham to encompass contracts executed with unlicensed branch offices. We decline to do so.

■ The statute requiring an agent to be licensed remains substantially unchanged since the *Benham* decision. *Benham* states: "It is unlawful ... to engage in the business or capacity of real estate broker or real estate salesman in this state without first having obtained a license from the real estate commission." Section 12–61–102, C.R.S.1973 (1978 Repl.Vol. 5). A real estate transaction conducted by an unlicensed person is illegal. Thus, a contract encompassing such a transaction is void. *Goodfellow v. Kattnig,* 533 P.2d 58 (Colo. App.1975) (not selected for official publication).

The statute upon which the Holters base their first claim for relief, § 12–61–103(2), C.R.S.1973 (1978 Repl.Vol. 5), states:

"In case a real estate broker maintains more than one place of business within the state, such broker shall apply for a branch office license, and a duplicate license shall be issued to such broker for each branch office so maintained upon payment of the statutory fee and compliance with the rules and regulations of the commission concerning such branch office."

The commission rules echo this provision. The statute and rules clearly do not declare unlicensed branch offices to be unlawful.

We find persuasive the reasoning in the California case of *Schantz v. Ellsworth,* 19 Cal.App.3d 289, 96 Cal.Rptr. 783 (1971). There, under a similar statutory scheme, the California court held that a licensed real estate broker was not precluded from recovering commissions because of failure to obtain a branch office license. The court found that the purpose of the licensing scheme was to protect the public from incompetent or untrustworthy real estate practitioners. The court found that the

statutory purpose is not defeated by allowing the broker to enforce the contract as his competency and trustworthiness were examined when he was licensed.

Here, defendant William M. Moore is, and has been, a duly licensed real estate broker. Moreover, defendants Wolff and Miller were at all times licensed real estate salesmen. Therefore, we conclude that it is not in derogation of the statutory scheme to decline to extend *Benham* to situations as the one presented here.

### III.

■ The initial inquiry pertaining to the Holters' second claim for relief concerns the procedural posture. In oral arguments, the question was raised as to whether the Holters were required to participate in a trial on the merits prior to obtaining review of the trial court's orders, which were interlocutory when entered. We conclude that when a final judgment is entered, adversary participation in a trial on the merits is not a prerequisite to obtaining appellate review of issues raised in the trial court.

In *Chartier v. Winslow Crane Service Co.*, 142 Colo. 294, 350 P.2d 1044 (1960), the court held that a party against whom a new trial has been ordered may elect to stand on the record, take an adverse judgment, and obtain appellate review of the order granting a new trial. *Accord Rice v. Groat*, 167 Colo. 554, 449 P.2d 355 (1969). *See* C.R.C.P. 59(g). Moreover, our decision to allow such appellate review does not violate the policy against piecemeal litigation. *See Harding Glass Co., Inc. v. Jones*, 640 P.2d 1123 (Colo.1982). Indeed, here, there is a possibility that two trials on the merits may be avoided.

The Holters have taken a calculated risk that the trial court was erroneous in its rulings concerning right to jury trial and exemplary damages. If they are correct, the case will be remanded and only one trial on the merits will have been conducted. However, if they are incorrect, they will be bound by the adverse judgment rendered in the trial court. *Rice v. Groat, supra.*

### IV.

The trial court cited *Kaitz v. District Court*, 650 P.2d 553 (Colo.1982) as controlling on the jury trial and exemplary damages issues. We find that the trial court's reliance on *Kaitz* is misplaced.

■ The character of the action is determinative of whether an issue of fact is to be tried to a jury or a judge. *Gleason v. Guzman*, 623 P.2d 378 (Colo.1981). In *Kaitz*, the action was brought by a beneficiary against a trustee appointed in probate proceeding. The holding in *Kaitz* stands for the proposition that actions by beneficiaries or wards against trustees or guardians within the probate court are generally equitable in nature.

■ Here, we are dealing with an action brought by the Holters, as principals, against Moore as their agent. The second claim for relief seeks damages for Moore's alleged breach of their fiduciary obligations growing out of a contract creating a principal-agent relationship. *See Circle T Corp. v. Deerfield*, 166 Colo. 238, 444 P.2d 404 (1968). While it is true that fiduciary obligations are equitble in nature, *see* D. Dobbs, *Remedies* § 10.4 (1973), the remedies of principals against agents who have breached their fiduciary obligations are generally at law. *White v. Brock*, 41 Colo. App. 156, 584 P.2d 1224 (1978); *see Restatement (Second) of Agency* § 399. *See generally* D. Dobbs, *supra.* Here, as the Holters have an adequate remedy at law for damages, equity will not lie. *Comstock v. Ft. Morgan Reservoir & Irrigation Co.*, 60 Colo. 101, 151 P. 929 (1915). The character of the action, therefore, is legal and not equitable. *Compare Restatement (Second) of Torts* § 874 Comment b *with Restatement (Second) of Trusts* § 197. Thus, the trial court erred in striking the Holters' demand for a jury trial on their second claim. *See* C.R.C.P. 38(a).

The trial court also relied on *Kaitz* in granting partial summary judgment in fa-

vor of Moore on the Holters' claim for exemplary damages. Again, we find *Kaitz* inapposite as the Holters' second claim for relief is one at law.

In their claim for exemplary damages, the Holters contend that their injury was attended by wanton and reckless conduct on the part of Moore in disregard of their rights and feelings. Exemplary damages are appropriate in such cases. Section 13–21–102, C.R.S.1973; *see White v. Brock, supra.*

Moreover, the fact that the second claim is based upon breach of fiduciary obligations is not dispositive as the action brought by the Holters is at law for damages and therefore supports a claim for exemplary damages. *See Harding Glass Co., Inc. v. Jones, supra.* Therefore, the trial court erred in granting partial summary judgment against the Holters on their prayer for exemplary damages on their second claim.

That part of the trial court's decision concluding that the Holters were without standing to maintain a private cause of action based upon violations of § 12–61–103(2) and Commission Rules C–4 through C–7 is affirmed. That part of the trial court's decision striking the Holters' jury demand and denying their claim for exemplary damages is reversed and the breach of fiduciary duty claim is remanded for new trial. The cross-appeal is dismissed.

STERNBERG and BABCOCK, JJ., concur.